Werner L. Loeb,
Acting Police Justice. Pursuant to an application for a writ of error coram nobis upon which an order was made granting a hearing, and upon the hearing which was held on January 5, 1966, the decision of the court is as follows:
I. THE FACTS
The defendant was arrested on November 19, 1965, pursuant to a warrant issued November 1, 1965, issued by Honorable Charles L. De Martini, Police Justice of the Village of Nyack, on an information filed by Investigator D. P. Trotta of the New York State Police charging defendant with transferring money in the game of policy in violation of section 974 of article 88 of the Penal Law, supported by the deposition of one Nettie McCleave.
This charge will he hereinafter referred to as Charge No. 1.
Following his arrest on Charge No. 1 and while at the Nyack police station the defendant was requested to execute a form of waiver of search warrant which he executed. A search was then made of defendant’s apartment in the Village of Nyack and certain evidence was seized, on the basis of which the defendant was charged with another violation of section 974 of article 88 of the Penal Law committed on the date of his arrest. This charge will be hereinafter referred to as Charge No. 2.
There was some difficulty in contacting a Magistrate for the purpose of the arraignment of defendant, so that the defendant was in police custody for a period of some four hours. He was then arraigned before Judge De Martini, pleaded guilty to the two charges, and was sentenced to two terms of three months in jail to he served consecutively.
*568 II. THE HEARING
Pursuant to the decision granting a hearing the issue herein is limited to the following claims of the defendant:
That defendant was subjected to an interrogation by two plainclothes detectives and effectively deprived of counsel in the course thereof; signing a written statement as a result thereof; being physically, through lack of reading glasses, unable to read his statement; and allegedly being promised and relying on a promise of easy treatment if he pleaded guilty or in the alternative being threatened with a five-year sentence if he contested the charges.
The defendant was the sole witness on his side of the case and stated generally the facts relating to his arrest and detention and indicated that the police officers failed to apprise him of his right to an attorney. His testimony was rather incoherent and halting. There was no testimony as to those allegations of the petition regarding his reading glasses or his inability to read, and no written statement subpoenaed or otherwise produced.
This leaves only the bare allegations of insufficient notice of the right to counsel and the alleged promises of lenient treatment.
The People’s case consisted of testimony by Investigator Trotta. Officer Trotta impressed me as a candid and competent witness. I credit his testimony that he and his fellow State police officer fully advised the defendant of his right to counsel at least twice and possibly three times as to both charges No. 1 and No. 2. The officer testified that he was in contact with the District Attorney by telephone, and I, therefore, believe he was sincere and informed in concluding that the evidence found during the search of defendant’s apartment was sufficient to warrant a felony charge under section 974-a of the Penal Law. The officer candidly admitted advising the defendant of this possibility.
III. CONCLUSION
The issues appear to me as follows:
1. May the police, subsequent to arrest and prior to arraignment, employ the interim period, even with the co-operation and consent of a defendant who. has been duly warned and advised of his rights, to gather evidence to establish another charge against the defendant?
2. Does such conduct render either or both convictions illegal?
*569 3. May a police officer negotiate with a defendant as to the degree of a crime with which the defendant is to be charged?
4. Were the defendant’s pleas of guilty coerced?
Acting Police Justices, such as I, are not at liberty to blaze paths in derogation of precedents. We are simultaneously not favored with exhaustive memoranda by counsel in matters before us. Yet, peculiarly, we are on occasion burdened with the very same knotty questions the final determination of which eventually devolves upon our more elevated brethren. Thus, like our fellows in another complex social structure, dig we must.
Digging in the present state of the law is at first blush akin to using a pitchfork in a morass. The substance is difficult to grasp with the prongs, even as the laborer sinks in the mire.
Persistence, however, yields some guidelines.
1. In this jurisdiction, the Federal Third Circuit rule expressed in People v. Dorado (394 P. 2d 952, on rehearing 62 Cal. 2d 350) is not the law, and therefore a suspect witness, even though he be accused, is liable to questioning without necessarily being advised of his rights by the police.
2. The above rule is inapplicable in cases where the person has been previously indicted or arraigned. (People v. Di Biasi, 7 N Y 2d 544.) Assuming that the filing of an information in a misdemeanor case, as here, is tantamount to indictment in a felony case, in that it is “ the formal commencement of a criminal action” (People v. Waterman, 9 N Y 2d 561, 565), such person is entitled to be advised of the right to remain silent and of the right to counsel, and probably, in the present state of the law, the police would be Avell advised to refrain from questioning him altogether as to the crime with which he stands charged lest they run afoul of the problem posed as follows by Mr. Justice David L. Malbin in the latest phase of that judicial cause celebre, People v. Jackson (46 Misc 2d 742, 753) (also known as Jackson v. Denno, 378 U. S. 368): ‘‘ However, an interesting question presents itself. Assuming arguendo, an accused is warned of his right to counsel, and he declines and refuses to have an attorney, should the investigation and interrogation cease and be deferred, even though the defendant desires to make a free and voluntary confession? It has been long established that counsel cannot be foisted upon a defendant. An accused has the right to represent himself at the trial or at any stage of the proceeding if it is established that he has an awareness of the situation that confronts him. Is the accusatory stage more critical than the trial itself? The accused when he so chooses may defend himself when the need for an attorney *570 at a complicated trial may present many issues to which the answers may not readily be given by even a very competent lawyer. It will be necessary for the trial courts to abide the event of a final determination by the appellate tribunal,”
3. The above rules do not bar .the police from questioning the person with relation to other crimes. This is the specific holding in People v. Stanley (15 N Y 2d 30, 32-33) in which the Court of Appeals held; ‘‘ However, as the language of the cases makes clear, the mere fact that the defendant has been arraigned or indicted on one charge does not prevent law-enforcement officials from interrogating him, in the absence of an attorney, about another and different crime — upon which he has been neither arraigned nor indicted — or render inadmissible a confession or other inculpatory statement obtained as a result of such questioning. (See People v. Weinstein, 11 N Y 2d 1098; People v. Lathan, 12 N Y 2d 822.) The reason is clear. With regard to the second crime about which the defendant is questioned, there has not yet been ‘ the formal commencement of the criminal action ’ against him. (People v. Waterman, 9 N Y 2d 561, 565, supra; see, also, Richardson, Evidence [9th ed., 1964], p. 547.) It would be a different matter, of course, if the first arraignment was a ‘ sham ’, merely ‘ a pretext for holding the defendant in connection with the investigation ’ of the other crime. (See People v. Robinson, 13 N Y 2d 296, 301; People v. Davis, 13 N Y 2d 690.) ”
Accordingly, as regards gathering evidence of other crimes, a defendant is not even entitled to be advised of his right to counsel by the police, since as to the other crime no formal criminal proceeding has been commenced against him with respect thereto,
Thus the procedure followed in the within case is untainted, ■ and the plea of guilty flowing therefrom equally untainted unless the discussion relating to the degree of crime to be charged be held to constitute fraud or coercion.
Fraud, by common-law principles, requires intentional misstatement of a material fact. This is absent here. Investigator Trotta believed, probably correctly, that he had sufficient evidence to charge the defendant with a violation of the felony created by section 974-a of the Penal Law, Coercion involves threats or force. This is absent here, Investigator Trotta merely offered the defendant two alternatives after affording him more than he was entitled to as to the 'second charge, by advising him of his right to counsel. The officer did so after the defendant was advised of his right to counsel and failed to request counsel. Prior thereto the officer had spoken to the *571 District Attorney and acted as the District Attorney’s agent. The District Attorneys in this State often negotiate for lesser pleas. There was no representation as to the sentence to be imposed and no promise, either of immunity or of any other kind. No bargaining was entered into as to the degree of the first charge, so that the previously formally commenced criminal proceeding remains untainted.
The trend of the philosophy of the Court of Appeals in this State towards a conservative view on the issue of limiting police tactics is demonstrated with clear current applicability in People v. Caserino (16 N Y 2d 255) decided a scant three months ago by the Court of Appeals in which the court held that misrepresentations by law-enforcement officers do not by any means necessarily render the proceedings defective.
I note that the same division of opinion that obtains between the various Federal circuits appears as well in our Court of Appeals. Witness the dissent of Chief Judge Desmond in Caserino (supra) joined by Judge Fuld; and the dissent of Judge Fuld and Chief Judge Desmond on a branch of the opinion in People v. Gunner (15 N Y 2d 226), the leading case which expressly rejects the Third Circuit reasoning in Dorado (supra); Judges Fuld and Desmond indicate their preference (15 N Y 2d 226, 237, supra) for the Dorado view.
Perhaps a comment from below might be useful. While appellate courts deliberate about matters originating in and about police stations, the court which 1 occasionally hold is conducted in a police station. As a result I am perhaps more directly affected by the current state of confusion in the law related to police tactics. 1 hear much grumbling among law-enforcement officials who now lack clear procedural guidelines. Courts and Judges inadvertently become villains in their eyes if they summarily disallow the fruits of hard police work deemed somehow tainted. This atmosphere is demoralizing and should be ended just as soon as possible by concrete, simply expressed, and unanimously adopted rules and directions, no matter whether they be those urged by the Third Circuit or the Second Circuit, or some intermediate compromise. A small town police station besieged with a court in session, a defendant in the lockup if there is one, parking meter collections, radio communications with cruising cars, fire alarms and a multitude of other distractions should not be burdened with decisions and subtle distinctions delineating the accusatory from the inquisitory. The current legal limbo should be resolved by providing a readily available legal litmus.
*572 Dictum aside, the precedents above-cited and the expressed attitude at this date of the majority of this State’s highest court appear to dictate a decision herein denying the application for the relief requested on this writ of error corcim nobis.